IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:                                            :
                                                  :        CASE NO. 10-11210 (ESL)
NELSON QUILES SANTANA                             :
MARIA DE LOS ANGELES ALVES RUIZ :
                                                  :        CHAPTER 13
          Debtors                                 :
_____:

OPINION AND ORDER

This case came before the Court on March 21, 2012 for a hearing on confirmation of the Debtors' *Amended Plan* filed on May 5, 2011 (the "*Amended Plan II*", Docket No. 40), the Chapter 13 Trustee's *Objection to Plan Confirmation and Memorandum of Law in Support Thereof* (the "*Objection to Plan Confirmation*", Docket No. 42) alleging that the *Amended Plan II* includes a provision in favor of Citibank N.A. ("Citibank") for his son's student loans that unfairly discriminates against other unsecured creditors and the Debtors' *Response to [the] Trustee's Objection to Plan Confirmation* (Docket No. 52). After hearing the arguments of the parties at the confirmation hearing and considering the parties' supplemental briefs, the Court took the matter under advisement. For the reasons stated herein, the confirmation of the Debtors' *Amended Plan II* is hereby denied.

Background

The Debtors filed their Chapter 13 bankruptcy petition on November 30, 2010 (Docket No. 1). In Schedule F, the Debtors listed a student loan with Citibank as a co-debtor debt in the amount of $100,400 (Docket No. 1, p. 37). On December 1, 2010, the Debtors filed a Chapter 13 Plan (Docket No. 5)[1]. On December 17, 2010, Citibank filed an unsecured *Proof of Claim* in the amount of $99,787.59 (Claims Register No. 7-1), as amended on January 21, 2011 to claim $100,077.84 (Claims Register No. 7-2).

On April 6, 2011, the Debtors filed a *Motion of Amended Plan and Notice of Opportunity to Object and for a Hearing* (Docket No. 32). The *Amended Plan* dated April 6, 2011 (the "*Amended Plan I*") proposed a total plan base of $73,000.00 and the following schedule of

---

[1] From December 1, 2010 through March 4, 2011, the Debtors amended their Chapter 13 plan twice on grounds unrelated to the one at hand. See Docket Nos. 5, 20, 23, 24, 27 and 28.

payments: 3 monthly payments of $840 each, one monthly payment of $1,040, and 56 monthly payments of $1,240 (Docket No. 32, p. 3).  The Debtors also included a section of unsecured preferred claims, which provides for the payment of 50% of each of the consumer co-debtor claims filed by Caribe Federal Credit Union (Claims Register Nos. 5 and 6 for the amounts of $9,391.33 and $4,363.00, respectively) and Citibank (Claims Register No. 7).  See Docket No. 32, p. 4.

A confirmation hearing was held on April 26, 2011 to discuss the *Amended Plan I*.  During the hearing, the Trustee objected the confirmation of the plan, arguing that by including Citibank's claim (Claims Register No. 7) in a class with co-debtor claims, the Debtors were unfairly discriminating against the other unsecured creditors in violation of 11 U.S.C. §1322(b)(1) because unlike the co-debtor claims filed by Caribe Federal Credit Union (Claims Register Nos. 5 and 6), Debtor Quiles Lasanta was not the actual debtor of Citibank's claim, but a co-signer of his son's loan.  The Court ordered the Trustee to review the co-debtors' claims filed in this case and submit his position in writing on or before May 24, 2011.  See Docket No. 37.  On May 5, 2011, the Debtors filed another *Motion of Amended Plan and Notice of Opportunity to Object and for a Hearing* to increase the base of the plan through a lump sum payment of $326.91 obtained from their 2010 tax refund.  See the *Amended Plan II* (Docket No. 40).  The provision regarding Citibank's classification as an unsecured preferred co-debtor claim remained unaltered.

On May 24, 2011, the Trustee filed his *Objection to Plan Confirmation* (Docket No. 42) restating his prior objection and claiming that the *Amended Plans I* and *II* should be denied confirmation because, by providing for the payment of 50% of Citibank's claim, it unfairly discriminates against other unsecured creditors and that such discrimination is not permitted by Section 1322 of the Bankruptcy Code.  The Trustee does not object that the co-debtor claims filed by Caribe Federal Credit Union (Claims Register Nos. 5 and 6) be separately classified and preferred.

After several procedural events (Docket Nos. 46, 48, 50 and 51), including an unfavorable report for confirmation by the Trustee (Docket No. 45), on December 22, 2011, the Debtors filed their *Response to Trustee's Objection to Plan Confirmation and Memorandum of Law in Support Thereof* (the "*Response*", Docket No. 52).  They contend that the plain language of Section

1322(b)(1) reveals that "Congress held the favored treatment of co-signed debt to be fair discrimination" (Docket No. 52, p. 7, ¶ 20).  They did not allege having derived any benefit whatsoever from the co-signed debt with Citibank.

On March 21, 2012, the Court held another confirmation hearing to entertain the Trustee's *Objection* and Debtors' *Response.*  See Docket Nos. 58 and 60.  During the hearing, the Trustee acknowledged that this case meets the liquidation analysis.  The parties were granted 14 days to supplement their briefs.

On April 18, 2012, the Trustee and the Debtors filed their supplemental briefs (Docket Nos. 64 and 65).  On May 3, 2012, the Debtors filed a sur-reply to the Trustee's supplemental brief (Docket No. 69) and on May 30, 2012, the Trustee filed his sur-reply (Docket No. 72).

Legal Analysis and Discussion

*(A)     Unfair Discrimination under Section 1322 and Co-signed Claims*

The Bankruptcy Court shall confirm a Chapter 13 plan that meets the requirements of Sections 1322 (contents of the plan) and 1325 (confirmation of the plan) of the Bankruptcy Code. Section 1322(b)(1) provides that a Chapter 13 plan may "designate a class or classes of unsecured claims, as provided in Section 1122 of [the Code], but may not discriminate unfairly against any class so designated".  11 U.S.C. § 1322(b)(1).  The prohibition of "unfair" discrimination suggests that the Code does allow discrimination that is fair.  See William L. Norton, Jr. & William L. Norton III, Norton Bankruptcy Law and Practice, 3rd ed. § 149:6 (2012).  "[T]he reason for a debtor to have separate classes of nonpriority unsecured claims in Chapter 13 is to prefer one class over another in terms of how much the members of each class are paid."  William D. Warren, Daniel J. Bussel & David A. Skeel, Jr., Bankruptcy, Foundation Press, 9th ed. 2012, p. 548.  As originally enacted in 1978, Section 1322(b) permitted a Chapter 13 debtor to designate classes of unsecured claims if two conditions were satisfied: that the classification be "as provided in Section 1122" and that the classification "not discriminate unfairly".

The origins of this "unfair discrimination standard" provide little guidance of its meaning. See Bruce A. Markell, A New Perspective on Unfair Discrimination in Chapter 11, 72 Am. Bankr. L.J. 227, 228-239 (1998), for the legislative history of the standard.  "[I]t seems fairly clear that the

3

unfair discrimination standard is intended to maintain equity among creditors of the same priority, much as the fair and equitable requirement preserves equity among creditors of different priorities. Beyond that level of generality, however, the origins and legislative history of the unfair discrimination rule are not much help.  To discern the details of this portrait of equity, courts ... must look elsewhere."  Stephen L. Sepinuck, Rethinking Unfair Discrimination in Chapter 13, 74 Am. Bankr. L.J. 341, 347 (2000).  The lack of specificity in Section 1322 led to a wide array of decisions by courts over the years, most of them dramatically split, on whether separate classification of co-signed unsecured claims was permitted or not in Chapter 13 cases.  Keith M. Lundin & William H. Brown, Chapter 13 Bankruptcy, 4th Edition, §150.1 at ¶ 14 (2004), *www.Ch13online.com*.

In 1984 Congress enacted the Bankruptcy Amendments and Federal Judgeship Act, Pub. L. No. 98-353, 98 Stat. 333 (1984) ("BAFJA"), which amended Section 1322(b)(1) to explicitly authorize the separate classification of co-debts as follows:

Subject to subsections (a) and (c) of this section, the plan may –

(1) designate a class or classes of unsecured claims, as provided in Section 1122 of this title, but may not discriminate unfairly against any class so designated; **however, such plan may treat claims for a consumer debt of the debtor if an individual is liable on such consumer debt with the debtor differently than other unsecured claims**.

11 U.S.C. § 1322(b)(1) (emphasis added on the commonly known "However Clause").

"The use of the introductory word 'however' signals that the power to separately classify consumer debts intended to be an exception to the classification power immediately preceding it in Section 1322(b)(1).  Because the preceding grant is broad, subject only to the statutory proscription against unfair discrimination, it is not clear as a matter of sentence construction what the word 'however' is intended to convey."  Keith M. Lundin & William H. Brown, Chapter 13 Bankruptcy, 4th Edition, §150.1 at ¶ 2 (2004), *www.Ch13online.com*.  Since the sentence construction in Section 1322(b)(1) is not clear, the legislative history of the 1984 amendment must be considered to analyze its conveyance.  See U.S. v. Great Northern Railway Co., 287 U.S. 144, 154-155 (1932) ("In aid of the process of construction we are at liberty, if the meaning be uncertain, to have recourse to the legislative history of the measure and the statements by those in charge of it during its consideration by the Congress."); Perez-Olivo v. Chavez, 394 F.3d 45, 49-50 (1st Cir. 2007), citing Summit Inv. & Dev. Corp. v. Leroux, 69 F.3d 608, 610 (1st Cir. 1995) ("The congressional intendment conveyed

by unclear statutory language may be discernible from its legislative history.")

The Senate and House reports for BAFJA do not contain a reference to Section 1322(b). Rather, this portion of the amendment derives from a prior bill whose language was partially incorporated into BAFJA. The only legislative history is the one in the Senate report for that earlier bill, the Omnibus Bankruptcy Improvements Act of 1983, S. 445, 98th Cong., 1st Sess. (1983). See In re McKown, 227 B.R. 487, 491-492 (Bankr. N.D. Ohio 1998) (explaining the legislative history of the amendment). That Senate report states as follows:

> Although there may be no theoretical differences between co-debtor claims and others, there are important practical differences. Often, the co-debtor will be a relative or a friend, and the debtor feels compelled to pay the claim. If the debtor is going to pay this debt anyway, it is important that this fact be considered in determining the feasibility of the plan. Sometimes, the co-debtor will have posted collateral, and the debtor will feel obligated to make the payment to avoid repossession of the collateral. In still other cases, the co-debtor cannot make the payment, and the effect of nonpayment will be to trigger a Chapter 7 or Chapter 13 petition by the co-debtor, which may have a ripple effect on other parties as well. For these reasons, separate classification is often practically necessary. S. Rep. No. 65, 98[th] Cong., 1[st] Sess., 17-18 (1983)[S. 445].

The foregoing reveals that "permitting favored treatment of co-debtor claims is intended to help prevent the debtor's bankruptcy from prompting a filing by the co-debtor, and then perhaps in domino fashion the bankruptcy of others." Rethinking Unfair Discrimination in Chapter 13, 74 Am. Bankr. L.J. at 369. The "However Clause" is also premised on the concern that the debtor may feel a moral obligation to pay co-debtor claims beyond the extent provided for in the plan, and that such payments might jeopardize the success of the plan. Id. at 369.

In In re Martinez-Rivera, — B.R. —, 2012 Bankr. LEXIS 4211 at *6, 2012 WL 3930367 at *2 (Bankr. D.P.R. September 10, 2012)[2], the Bankruptcy Court for the District of Puerto Rico recently ruled that "the unfair discrimination test does not apply to co-debtor claims [in virtue of the However Clause] **where the obligation is entered into for debtors' benefit**" (emphasis added). In that case, the Court found that the obligation was entered into for the debtor's benefit, and consequently ruled that the unfair discrimination test was inapplicable to the co-signed debt. This

---

[2] The decision in In re Martinez-Rivera (Godoy, Bankruptcy Judge) was appealed to the Bankruptcy Appellate Panel for the First Circuit ("BAP") on September 21, 2012. As of this date, the BAP has not ruled on the appeal.

Court agrees with the decision in In re Martinez-Rivera. Just as the co-debtor stay does not apply to debts incurred for the benefit of the co-debtor under 11 U.S.C. § 1301(c)(1), favored treatment of a co-debtor claim is only available if the debtor --not the co-debtor-- was the one who benefitted from the loan.  In re Janssen, 220 B.R. 639, 642 (Bankr. N.D. Iowa 1998).  As explained in Spokane Ry. Credit Union v. Gonzales (In re Gonzales), 172 B.R. 320, 330 (E.D.Wash. 1994):

> Underlying the assumption that a debtor will feel a great need to pay in full a co-signed debt between the debtor and a friend or relative is the additional assumption that the co-debt benefitted the debtor, not the friend or relative.  The obligation to repay arises because the friend or relative extended his or her credit to help the debtor acquire credit.  In return for the help, a debtor will feel a moral obligation to repay the loan in full to protect the co-signer.
>
> **However, the same is not true where the debtor extends his or her credit to help the co-signer.**  No moral obligation exists to repay the loan since no help was given to the debtor.  On the contrary, it was the debtor that helped the co-signer.  Without the moral obligation to repay the loan in full, irrespective of the plan, there is little chance this type of co-debt will impede completion of the plan.  Therefore, no reason justifies the classification of unsecured co-signed debt, acquired for the benefit of the co-signer, separately from other general unsecured debt.  To do so would be unfair to the general unsecured creditors.  **Accordingly, this court finds that Section 1322(b)(1) is limited to co-signed debt acquired for the benefit of the debtor, not the co-signer.** (Emphasis added.)

Also see In re McKown, 227 B.R. at 492 ("debtor [must] establish that the co-signed obligations were incurred for her benefit as opposed to the benefit of the co-signer in order to separately classify co-signed debt"); In re Battista,180 B.R. 355, 358 (Bankr. D.N.H. 1995) (the debtor must establish that the co-signed claim falls within the Section 322(b)(1) exception and was incurred for debtor's benefit as opposed to the benefit of the co-signer); Rethinking Unfair Discrimination in Chapter 13, 74 Am. Bankr. L.J. at 369.

*(B)*      *Student Loans Co-Signed by Debtors under Section 1322(b)(1): who do they benefit?*

"There is neither legislative history nor clear congressional intent concerning the separate classification of student loan debts."  Seth J. Gerson, Separate Classification of Student Loans in Chapter 13, 73 Wash. U. L. Q. 269, 283 (1995).  Caselaw has found, however, that student loans co-signed by debtors for their children generally benefit the children only, who would be ordinarily be expected to pay the obligations anyway.  See In re Beauchamp, 283 B.R. 287, 289 (Bankr. D.Minn. 2002).  "There is no legitimate purpose in allowing the debtors to pay the obligations of their children, who received the benefits of the loans, at the expense of the debtors' other unsecured

creditors." Id. at 289. Courts have also distinguished between student loan debts from general child support obligations, which have been found to justify more favorable treatment than general unsecured debts. For instance, in In re Scheiber, 129 B.R. 604, 606 (Bankr. D. Minn. 1991), the Court reasoned as follows:

> In [In re] Sotrberg, [94 B.R. 144, 147 (Bankr. D. Minn. 1988)], the strong public policy of ensuring the support of children was the major focus. The opinion cites to examples of statutory special treatment for child support obligations. Public policy ensuring repayment of student loans is not as significant. In this case, the debtors argue "the entire educational system in the United States hinges on student loan availability which in turn requires the repayment of student loans." To the extent this is true, Congress has remedied the situation by amending 11 U.S.C. § 1328. The fact that Congress amended Section 1328(a)(2) to except from discharge educational loans as specified in 11 U.S.C. § 523(a)(8) indicates that Congress insists that debtors repay their student loans but this does not evidence a position as favored in public policy as are alimony and child support payments.

The facts considered in In re Hamilton, 102 B.R. 498 (Bankr. W.D.Va. 1989), are similar to the ones before this Court. The debtors in In re Hamilton separately classified in their Chapter 13 plan the educational loans for their children, which the debtors had co-signed, from the general unsecured claims under 11 U.S.C. § 1322(b)(1). The debtors offered no evidence at the confirmation hearing as to their reasons for requesting the separate classification of the co-signed educational loans, although their counsel argued that the debtors' desire was to protect their children from the claims of these creditors by paying as much to the creditors as is possible. No evidence was offered of an agreement between the debtors and the educational lenders that the proposed plan payments would result in deferral of legal action against the children for collection of the balance owed. Thus, the debtors proposed to pay 14% of the educational loans and approximately 5% of the remaining unsecured claims. The debtors also claimed that their benefit in that proposed classification was to protect their children from the claims of the educational lenders while they finished their college education. The Hamilton Court ruled that the protection of one's children from claims of creditors who funded their higher education is **not** the type of legitimate interest of the debtor that Congress intended to protect when they enacted the However Clause in 1984. 102 B.R. at 501. It further held that "the desire of parents to protect their children from the claims of creditors for debts incurred solely for the benefit of the children does not, by itself, constitute a legitimate interest of the debtor which should be protected by permitting discriminatory treatment

under 11 U.S.C. § 1322(b)(1). Accordingly, the plan ... [could not] be confirmed under 11 U.S.C. § 1325." Id. at 502. This Court adopts that same reasoning.

The Trustee has also brought to the attention of the Court the case of In re Lilley, 2010 Bankr. LEXIS 4867, 2010 WL 5462519 (Bankr. N.D. Iowa 2010), where the debtor co-signed a student loan with his daughter. The debtor proposed to pay the student loan outside the Chapter 13 plan under Section 1322(b)(1) over the general unsecured creditors. The Court held that the debtor's plan could not separately classify and make payments outside of the plan on the co-signed unsecured student loan debt at a higher rate than the general unsecured creditors could receive under the plan. The Lilley Court followed the reasoning earlier discussed: "co-signed consumer debt under Section 1322(b)(1) is only eligible for separate classification and treatment when the co-debt was acquired for the benefit of the debtor." 2010 Bankr. LEXIS 4867 at *5, 2010 WL 5462519 at *2, citing In re Janssen, 220 B.R. at 642. Thus, the Court in that case determined that because the student loan co-signed by the debtor only benefitted his daughter, its proposed classification and treatment unfairly discriminated against other general unsecured creditors and therefore confirmation was denied[3].

*(C)    Burden of Proof*

"As a general rule, ... Chapter 13 requires equality of distribution among nonpriority unsecured creditors, and the burden of justification is on those who propose plans to the contrary." Bentley v. Boyajian (In re Bentley), 266 B.R. 229, 240 (B.A.P. 1st Cir. 2001). The Debtors have not met that burden in the instant case. The Debtors' only argument is a legal one: "Section 1322(b)(1) makes no distinction over who is the subject of the co-signed debt and that a Debtor may discriminate in favor of all co-signed debt without recourse to any unfair discrimination test. The plain language of the statute is unambiguous in that all categories (as opposed to some categories)

---

[3] In Lilley, the Court went one step further stating that "even if there was some theoretical benefit to the Debtor in co-signing the loan, and that it could fall under to co-signor provision of Section 1322(b)(1), the Debtor here still must satisfy the ... test [established in In re Leser, 939 F.2d 669, 671 (8th Cir.1991) to] show there was no 'unfair' discrimination". 2010 Bankr. LEXIS 4867 at *6, 2010 WL 5462519 at *3. This Court declines to take that further step in the present case as its ruling that the "However Clause" of Section 1322(b)(1) is not applicable when the co-signed debt was not entered into for the debtor's benefit is dispositive of the controversy before its consideration.

of co-signed debt can be preferred in a Chapter 13 plan over other unsecured debt without the restraints of unfair discrimination tests." Debtors' *Supplement to Brief* (Docket No. 65, p. 2, ¶ 2). The Debtors have not made allegations that would move this Court to find that the co-signed student loan with Citibank was for their benefit, or that there is a legitimate purpose for Citibank's co-signed claims to be given a favorable classification at the expense of the general unsecured creditors. This Court concludes, as did the Court in In re Martinez-Rivera, that the co-signed debt exception (the "However Clause") in Section 1322(b)(1) applies only when the loan was given for the debtor's benefit.

## Conclusion

For the reasons stated herein, the Trustee's *Objection to Plan Confirmation* is hereby sustained and the Debtors' *Response* thereto is hereby denied. Therefore, confirmation of the proposed *Amended Plan II* (Docket No. 40) is hereby denied.

In San Juan, Puerto Rico, this 18th day of October , 2012.

SO ORDERED.

Enrique S. Lamoutte
United States Bankruptcy Judge